IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH RAYMOND McKETTRICK | : | CIVIL ACTION NO. **4:CV-06-0329** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| TROY WILLIAMSON, et al., | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background**.

The Plaintiff, Kenneth Raymond McKettrick, an inmate at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, filed, *pro se,* this *Bivens*[1] action pursuant to 28 U.S.C. § 1331, on February 14, 2006.  Plaintiff names as Defendants two individuals employed by the Federal Bureau of Prisons ("BOP"), one named person at USP-Lewisburg, namely Warden Williamson, and the other an unknown John Doe Defendant who is the BOP Northeast Regional Director.  While Plaintiff originally filed an *in forma pauperis* request (Doc. 2), he later paid the filing fee in full (Doc. 6).[2]

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

[2] On March 15, 2006, McKettrick filed a § 2241 habeas corpus petition naming Warden Williamson as the Respondent, Civil No. 06-0543, M.D. Pa.  In his Habeas Petition, McKettrick essentially raises the same claim as he does in the instant *Bivens* suit, namely that his placement in the Special Management Unit ("SMU") at USP-Lewisburg without notice and a hearing, and without a Bureau of Prisons policy or criteria governing the SMU program, violates his due

**II. Allegations of Complaint.**

Attached to his form Complaint (Doc. 1), Plaintiff has included a handwritten statement of claim, Att. A, and his Affidavit, Att. B.  With respect to his John Doe Defendant, Plaintiff does not allege any personal involvement necessary to name this unidentified BOP official as a Defendant. (Doc. 1, pp. 1-3).  Plaintiff seemingly includes the unnamed John Doe Defendant based on *respondeat superior,* and this is not permissible in a *Bivens* action.  Plaintiff states as to Defendant John Doe that he is challenging the procedural application of BOP's SMU policy that violates his Constitutional rights, *i.e.* there is no approved BOP standard or criteria governing an inmate's placement into the SMU program.  (Doc. 1, Att. A, attached handwritten statement of claim). Plaintiff states that he is challenging the procedural application of BOP policy which lacks any approved standard or criteria with respect to the placement of inmates into the SMU program. Plaintiff does not specify how the John Doe Defendant is personally involved with his placement into the SMU program at USP-Lewisburg.  Plaintiff claims that the named Defendant, Warden Williamson, violated his due process rights by permitting his placement into the SMU program at the prison on January 20, 2006 without any criteria for said confinement, and because he was racially profiled as a Native American, a group which has been unlawfully classified as a disruptive gang. (Doc. 1,pp. 2-3 & Att. A, attached handwritten statement of claim).

In his Affidavit attached to his Complaint, Plaintiff states that not only did Defendants violate his due process rights, but that after his transfer to USP-Lewisburg, on December 8, 2005, when he

---

process rights.  By separate Report and Recommendation, we shall recommend that McKettrick's Habeas Corpus Petition be construed as a *Bivens* action, and that it be consolidated with the present *Bivens* action.

asked for BOP Administrative remedy form BP-8, he was threatened by prison staff with the SMU if he filed his grievance. (Doc. 1, Att. B, ¶ 2). Plaintiff states that on January 12, 2006, SIS told him that he was not put in for a Transfer Referral, as he was previously told he would, but that a SMU Referral was made for him due to his pursuit of Administrative remedies. and due to his Native American race. (*Id.*, ¶ 2, p. 2). Plaintiff does not allege the personal involvement of Defendant Williamson or the John Doe Defendant in the claimed retaliatory transfer to the SMU due to his race and filing grievances. (Doc. 1, att. A & Att. B).

As relief, Plaintiff requests an injunction in the form of this Court ordering his SMU program classification to be null and void, to order the BOP to remove Native Americans as a disruptive group, to order BOP to establish a policy statement with due process for the placement of inmates into the SMU program, and to release him back into general population. (Doc. 1, p. 3). Plaintiff does not specifically request any monetary damages. (*Id.*).

Plaintiff claims that he challenges BOP's policy regarding the placement of inmates in the SMU program since it violates his Constitutional rights because it lacks any approved standard or criteria, it is an extension of disciplinary sanctions, and it is arbitrarily and capriciously applied by BOP staff. (*Id.*).

Plaintiff also states that he exhausted his administrative remedies regarding his present claims against the BOP and our Defendants "as far as I can" since he has filed a BP-8 and BP-9, but the BOP personnel do not respond. (*Id.*, p. 2, ¶ II.).[3]

---

[3] It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Id.* at 230. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding

This case is construed as a Fifth Amendment due process claim of SMU confinement against the two individual Defendants, as well as a First Amendment retaliation claim.

## III. PLRA.

Notwithstanding Plaintiff's payment of the filing fee, the Prison Litigation Reform Act of 1995 (the "PLRA")[4] obligates the Court to engage in a screening process.[5] Specifically, even though Plaintiff paid the filing fee for a civil rights action, we must still screen his complaint pursuant to 28 U.S.C. §1915A. *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir. 2004) 2004 WL 229073 (non-precedential) (If prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915A(b) and not 28 U.S.C. § 1915(e)(2)(B)).

Section 1915A provides:

> **(a) Screening**.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

---

prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*.  However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[5]As stated above, Plaintiff completed an application to proceed *in forma pauperis*, but he later paid the full filing fee. (Docs. 2 & 6).

>    **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>    **(2)** seeks monetary relief against a defendant who is immune from such relief.

In reviewing the complaint under 28 U.S.C. §1915A(b), we have determined that the Plaintiff does not state the personal involvement of either Defendant Williamson or John Doe Defendant with respect to his retaliatory SMU transfer claim, and that Plaintiff's due process claim regarding his SMU placement without any criteria as against our Defendants has been found as not implicating a liberty interest by this Court. Thus, we find that Plaintiff's *Bivens* action, based on the face of his pleading, fails to state a Fifth Amendment claim. We also find that under §1915A(b)(2), the Plaintiff cannot proceed as against the John Doe Defendant since he cannot be served, and since there is no personal involvement in Plaintiff's placement in the SMU alleged with respect to this unnamed Defendant. Thus, we shall recommend that the John Doe Defendant be dismissed. Further, we find that since no personal involvement of our Defendants is alleged with respect to Plaintiff's retaliatory transfer claim, Plaintiff should be permitted to amend his pleading for this claim to raise it against the responsible prison staff members.

## IV. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46

(1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Estelle v. Gamble,* 429 U.S. 97, 107-108 (1976).

**V. *Bivens.***

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).  A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992).  In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

**VI. Discussion.**

   *1. No Personal Involvement of John Doe Defendant*

As discussed above, there is no personal involvement alleged with respect to the John Doe and Plaintiff's challenged placement into the SMU program.   Plaintiff only challenges BOP's policy as being without any standard or criteria.  This does not suffice to name the BOP Northeast Regional

6

Director as a Defendant in this action. *Respondeat superior* is not an acceptable basis to hold a BOP official as a Defendant in a *Bivens* action, as mentioned above. Further, Plaintiff does not state that this John Doe Defendant had anything to with his alleged retaliatory transfer to the SMU program due to his race and filing of grievances.

Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. *See Rode,* 845 F.2d at 1208.

A Defendant prison official cannot be held liable for the actions of others since the doctrine of *respondeat superior* is not an acceptable basis for civil rights liability. *See Durmer v. O'Carroll*, 991 F. 2d 64, 69 (3d Cir. 1993). Liability may only be based upon Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 547 F. 2d 1077 (3d Cir. 1976).

With respect to the John Doe Defendant named in Plaintiff's Complaint, but not mentioned in the body of the pleading (Doc. 1, pp. 2-3, Att. A & Att. B), we find no claims against this unnamed supervisory BOP Defendant. Further, there is nothing in a civil rights action to allow

service on an unnamed Defendant. The Court does not have the ability to direct service on this Defendant due to Plaintiff's failure to specifically identify him, and this warrants dismissal of the claims against the unnamed Defendant. *See Vollmer v. Bowles*, 1997 WL 102476 at * 2 (N.D. Tex 1997); *Siguradson v. DelGuercio*, 241 F. 2d 480, 482 (9th Cir. 1956) (claims against John Doe Defendants dismissed as frivolous because federal rules make no provision for joining fictitious Defendants in an action under a federal statute).

Therefore, we shall recommend that Defendant John Doe, BOP Northeast Regional Director, be dismissed.[6]

*2. Fifth Amendment Due Process Claim*

As discussed, Plaintiff alleges that Defendant Williamson allowed the application of an illegal prison policy that caused him to be placed him in the SMU program on January 20, 2006, presumably to the present. Plaintiff also states that he was transferred to the SMU based on retaliation premised on his race and the grievances he filed. However, Defendant Williamson's personal involvement is not implicated in this alleged retaliatory transfer by Plaintiff.

In a Supplement to his Complaint filed on February 14, 2006, Plaintiff submits a copy of a letter to Defendant Williamson dated February 13, 2006, in which he states that he filed a BP-9 on January 19, 2006 regarding his illegal placement in the SMU, and was not given a receipt. Plaintiff states that he cannot get any reply to his Administrative remedies. (Doc. 3). Plaintiff states that he

---

[6]If the Plaintiff is able to identify the John Doe Defendant and to state the personal involvement of this Defendant in the placement of Plaintiff in the SMU and in Plaintiff's alleged retaliatory transfer, he may request leave to amend his pleading. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given").

has filed all of his possible Administrative remedies and has no recourse but to ask for the Court's help. A prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.

Plaintiff has not stated a First Amendment retaliation claim against Defendants Williamson and John Doe. In *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), the Court stated that "a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). We find that this nexus does not exist with

respect to either of our Defendants.  Plaintiff does not allege that our Defendants retaliated against him due to his race and his grievances by placing him into the SMU program.  (Doc. 1, Att. A & Att. B, pp. 1-2, ¶ 2.).

Moreover, Plaintiff has not alleged that he had a "protected liberty interest" that was infringed by Defendant Williamson's actions.  "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law." *Griffin v. Vaughan*, 112 F.3d 703, 706  (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

The Plaintiff avers that the BOP's SMU placement policy caused him to lose his general population status  as well as  caused him to be placed in the SMU program since January 20, 2006 without any approved standard or criteria.

In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest.  Based on *Sandin* and *Griffin,* the Plaintiff's Complaint as against Defendants Williamson and John Doe fails to state a claim, since his forty-eight (48) (as of March 9, 2006) days SMU detention does not give rise to a protected liberty interest.  Further, no liberty interest is implicated by the Plaintiff because he had no right to a particular prison classification, *i.e.* general population classification.  It is well-settled that an inmate

10

has no recognizable constitutional right to a particular custody status. *See Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997).

We also find that the Plaintiff is requesting relief in the form of Court intervention and management while he is in prison, *i.e.* a change in his custody status level and/or security housing level in the prison by transferring him out of the SMU program and back into the general population. The Court will not generally interfere with prison administration matters such as the prison's decision to place Plaintiff in a particular security level. The Court should give significant deference to judgments of prison officials regarding prison regulations and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002).

Moreover, based on this Court's decisions in *Francis v. Dodrill,* 2005 WL 2216582 (M.D. Pa.), and *Stotts v. Dodrill*, Civ. No. 04-0043, M.D. Pa.,[7] we find that Plaintiff's placement in the SMU does not implicate his due process rights. As this Court in *Francis* stated:

> The defendants also argue that Francis' placement in the
> SMU does not implicate his due process rights. We agree. A due
> process liberty interest "in avoiding particular conditions of confinement
> may arise from state policies or regulations." *Wilkinson v. Austin,*
> ___ U.S. ___, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).
> The Due Process Clause protects a prisoner's right to "freedom
> from restraint, which, while not exceeding the sentence in such
> an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and
> significant hardship in relation to the ordinary incidents of prison
> life." *Id.* at 2394 (quoting *Sandin v. Connor*, 515 U.S. 472, 484,
> 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

---

[7] In *Stotts*, this Court found that federal inmates' placement in the SMU following a riot incident did not violate their due process rights, that inmates' placement in the SMU was not punitive in nature, and that inmates were not entitled to the procedural safeguards.

11

> The proper focus for determining whether prison conditions give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations. *Sandin*, 515 U.S. at 484. In *Sandin*, an inmate was charged with violating prison regulations. *Id*. at 475. At a hearing, the hearing committee refused the inmate's request to present witnesses. *Id*. The committee found the inmate guilty and sentenced him to disciplinary segregation. *Id*. The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record. *Id*. at 476. Thereafter, the inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation of procedural due process during the disciplinary hearing. *Id*. The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. *Id*. at 477. The Supreme Court reversed, finding no liberty interest. *Id*. at 484. In doing so, it rejected an approach that focused on whether the prison regulations "went beyond issuing mere procedural guidelines and has used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Id*. at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id*. at 482. Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. In applying this test, the Court observed, "[discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485. The Court then found that the inmate's disciplinary segregation "did not present a dramatic departure from the basic conditions of Conner's indeterminate sentence" because the conditions of disciplinary segregation were similar to those faced in administrative and protective custody. *Id*. at 486.

In *Wilkinson v. Austin*, ___ U.S. ___, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005), the Court applied the *Sandin* test and found that the plaintiff's due process rights were implicated when he was placed in a program where:

almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room ... [P]lacement ... is indefinite and, after an initial 30 day review, is reviewed just annually . . . . [P]lacement disqualifies an otherwise eligible inmate for parole consideration.

*Id*. at 2394-95.

The court found that these harsh conditions "give rise to a liberty interest in their avoidance."

*Id*. at 2395.

*Fraise v. Terhune*, 283 F.2d 506 (3d Cir.2002) applied the *Sandin* test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest.  Inmates who the prison deemed members of groups that posed a security threat were placed in the STGMU.  *Id*. at 509.  "An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program."  *Id*. at 511.  The Court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU.  *Id.; see also Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (finding that additional restrictions in administrative custody for a period of fifteen months does not deprive prisoners of protected liberty interests).

We find that the conditions in the [USP-Lewisburg] SMU do not remotely approach the severity of the conditions *Wilkinson* found to give rise to a protected liberty interest, and are comparable to the conditions in cases such as *Sandin, Fraise,* and *Griffin*, which found no protected liberty interest.

13

*Id.*, pp. *3-*4.

The *Francis* Court concluded that the restrictions in the SMU in federal prison at USP-Lewisburg were no greater than the restrictions placed on the inmate in *Griffin*. *Id*. * 5. In our case, Plaintiff does not allege any greater restrictions in the SMU at USP-Lewisburg than were placed on the inmates in *Francis*, who were also in the SMU at USP-Lewisburg.

>The *Francis* Court then stated:
>
>>Inmates have no due process right to a facility of their choosing. *Young v. Quinlan*, 960 F.2d 351, 358 n. 16 (3d Cir. 1992). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. Inmates do, however, have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. This is not such a transfer. We find that these conditions and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Using restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law. While Francis clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause.

*Id.*

>Further, the Court in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997), stated:
>
>>Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that he failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

14

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id*. at p. 708. Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protection." *Id*.

Moreover, this Court in *Francis, supra at* * 2, stated that "A violation of the Due Process Clause involves the following three elements: '1) the claimant must be 'deprived of a protectable interest; 2) that deprivation must be due to some governmental action; and 3) the deprivation must be without due process.'" (citation omitted). The *Francis* Court, as stated, found that placement of its Plaintiff, a federal inmate at USP-Lewisburg, in the SMU did not implicate his due process rights. *Id*. * 3. Based on *Griffin* and *Francis*, Plaintiff's placement in the SMU for about forty-eight (48) days (*i.e.* January 20, 2006 to March 9, 2006) does not give rise to a protected liberty interest.

In *Thorpe v. Dohman*, 2004 WL 2397399 * 2 (E.D. Pa.), the Court considered whether Plaintiff inmate's placement in the SCI-Graterford RHU on administrative custody status for 15 days without receiving a hearing violated due process. The Court stated that its Plaintiff was entitled to a hearing if he had a liberty interest in remaining in the prison's general population. The *Thorpe* Court found that, based in part on *Griffin, supra*, the 15-day delay in giving plaintiff an administrative hearing did not violate due process. *Id*. * 3. The *Thorpe* Court then cited *Whittington v. Vaughn*, 289 F. Supp. 2d 621, 626 (E. D. Pa. 2003), and quoted it as follows: "The courts of this circuit have repeatedly held that temporary transfer to SCI Graterford's RHU, whether for administrative or

disciplinary reasons, does not impose [atypical and significant] hardship."

Therefore, we find that none of our Plaintiff's due process rights were violated by the Warden. Our conclusion is supported by several additional cases, including the following cases.

In *Fraise v. Terhune*, 283 F. 3d 506, 522 (3d Cir. 2002), the Court held that the DOC did not violate the due process rights of state inmates who were transferred to the prison Security Threat Group Management Unit (SGTMU) without notice since inmates were not deprived of a protected liberty interest. The *Fraise* Court concluded that:

> Here, the plaintiffs were not subjected to confinement that exceeded the sentences imposed upon them or that otherwise violated the Constitution, and therefore no liberty interest created by the Due Process Clause itself was impinged. *See Hewitt*, 459 U.S. at 468, 103 S.Ct. 864 (It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.).

*Id*.

The *Fraise* Court found that the inmates could not show that they were deprived of a state-created liberty interest. The Court went on to state:

> Although inmates who are transferred to the STGMU face additional restrictions, we hold that the transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Griffin*, 112 F.3d at 706-08 (15 months in administrative segregation not atypical and significant hardship); *see also, e.g., Jones v. Baker*, 155 F.3d 810, 813 (6th Cir.1998) (confinement in administrative segregation for two and one-half years is not atypical and significant hardship); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996)(rejecting as frivolous a claim that classification as gang member and placement in administrative segregation unit deprived inmate of a protected liberty interest). Thus, the plaintiffs lack a protected liberty interest and their due process claim must fail.

*Id*. 522-23.

In *Bey v. PA DOC*, 98 F. Supp. 2d 650, 661, n. 25 (E.D. Pa. 2000), the Court noted that:

> plaintiff's ten-month confinement in administrative custody at [SCI] Greene does not represent such an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life" so as to trigger due process protection. *See, e.g. Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (citing *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and finding that plaintiff's fifteen-month confinement in administrative custody did not deprive plaintiff of any "state created liberty interest, and that the failure to give [plaintiff] an administrative hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution"); *Wilson v. Horn,* 971 F.Supp. 943, 947 (E.D.Pa.1997) (stating that inmate "has no federal constitutional right to a particular custody status); *Smith v. Luciani,* Nos. CIV.A. 97-3037 and 97-3613, 1998 WL 151803, at (E.D.Pa. Mar. 31, 1998) (Prisoners, however, have no constitutional right to a hearing before a term of seven months administrative custody is imposed, because it is not atypical of the types of deprivations expected while in prison) (citing *Griffin* ).

Based on the foregoing and the well-settled case law, we find that Plaintiff's action fails to state a due process claim. We also find that Plaintiff has failed to allege any personal involvement of the Defendant Warden in his retaliatory transfer to the SMU program claim. Thus, we shall recommend that this case be dismissed as against Defendant Warden Williamson.

**VII. Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's *Bivens* action be dismissed as to both Defendants for failure to allege their personal involvement in his claims, and

for failure to state a claim against them. [8] It is also recommended that Plaintiff be granted leave to amend his Complaint only with respect to his First Amendment retaliation claim against the responsible prison staff members. Further, it is recommended that this case be remanded to the undersigned for further proceedings.

                                      **s/ Thomas M. Blewitt**
                                      **THOMAS M. BLEWITT**
                                      **United States Magistrate Judge**

**Dated: March 21, 2006**

---

[8]Notwithstanding McKettrick's *pro se* status, we do not recommend that he be permitted to amend his Complaint regarding his due process claim since we find that based on well-settled case law his due process claim against the Defendants fails to state a constitutional violation. Thus, we find futility of any amendment of this claim, and we shall not recommend Plaintiff be granted leave to amend his due process claim. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 236 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH RAYMOND McKETTRICK | : | CIVIL ACTION NO. **4:CV-06-0329** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| TROY WILLIAMSON, et al., | : | |
| | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 21, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                                               **s/ Thomas M. Blewitt**
                                                                               **THOMAS M. BLEWITT**
                                                                               **United States Magistrate Judge**

**Dated: March 21, 2006**