IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH RAYMOND McKETTRICK | : | CIVIL ACTION NO. **4:CV-06-0329** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| TROY WILLIAMSON, et al., | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background**.

The Plaintiff, Kenneth Raymond McKettrick, an inmate at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, originally filed, *pro se,* this *Bivens*[1] action pursuant to 28 U.S.C. § 1331, on February 14, 2006. Plaintiff named as Defendants two individuals employed by the Federal Bureau of Prisons ("BOP"), one named person at USP-Lewisburg, namely Warden Williamson, and the other an unknown John Doe Defendant who was the BOP Northeast Regional Director. Plaintiff filed an *in forma pauperis* request (Doc. 2), but he later paid the filing fee in full (Doc. 6).[2]

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

[2]On March 15, 2006, McKettrick filed a § 2241 habeas corpus petition naming Warden Williamson as the Respondent, Civil No. 06-0543, M.D. Pa. In his Habeas Petition, McKettrick essentially raised the same claim as he did in the instant *Bivens* suit, namely that his placement in the Special Management Unit ("SMU") at USP-Lewisburg without notice and a hearing, and without a Bureau of Prisons policy or criteria governing the SMU program, violated his due process rights. On May 10, 2006, the District Court issued an Order dismissing McKettrick's

We preliminary screened Plaintiff's original complaint under the Prison Litigation Reform Act of 1995 (the "PLRA"),[3] which obligates the Court to engage in a screening process despite his payment of the filing fee). We stated that even though Plaintiff paid the filing fee for a civil rights action, we must still screen his complaint pursuant to 28 U.S.C. §1915A. *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir. 2004) 2004 WL 229073 (non-precedential) (If prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915A(b) and not 28 U.S.C. § 1915(e)(2)(B)).

Section 1915A provides:

> **(a) Screening**.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
>> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>>
>> **(2)** seeks monetary relief against a defendant who is immune from such relief.

In reviewing the original complaint under 28 U.S.C. §1915A(b), we found that the Plaintiff did not state the personal involvement of either Defendant Williamson or John Doe Defendant with respect to his retaliatory SMU transfer claim, and that Plaintiff's due process claim regarding his SMU placement without any criteria as against our Defendants did not implicate a liberty interest. Thus,

---

Habeas Corpus Petition. *See* Civil No. 06- 0543, Doc. 5.

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

2

we found that Plaintiff's *Bivens* action failed to state a Fifth Amendment due process claim. We also found that under §1915A(b), the Plaintiff could not proceed as against the John Doe Defendant since he could not be served, and since there was no personal involvement in Plaintiff's placement in the SMU alleged with respect to this unnamed Defendant. Thus, we recommended that the John Doe Defendant be dismissed. Further, we found that since no personal involvement of the named Defendants was alleged with respect to Plaintiff's retaliatory transfer claim, *i.e.*, he was transferred to the SMU program due to his grievances against prison staff, Plaintiff should be permitted to amend his pleading for this claim to raise it against the responsible prison staff members. (Doc. 7).

On May 22, 2006, the District Court issued an Order adopting our Report and Recommendation in full, and granted Plaintiff leave to file an amended complaint with respect to his First Amendment retaliation claim. (Doc. 13). Plaintiff then filed his Amended Complaint on June 13, 2006. (Doc. 14). We now screen Plaintiff's amended pleading. We find that Plaintiff has stated a First Amendment retaliation claim only against Defendant Lt. Mconnell, SIS. We find Defendants BOP; Harley Lappin, BOP Director; Dodrill, Regional BOP Director; Troy Williamson, Warden at USP-Lewisburg, former Warden at USP-Allenwood; Tim Mathews, SIA; and John Does 1 to 100 should be dismissed due to their lack of personal involvement in Plaintiff's claim.

**II. Allegations of Amended Complaint.**

We shall not repeat in full Plaintiff's First Amendment retaliation claim since it is essentially the same as in his original Complaint, which we have thoroughly discussed in our prior Report and Recommendation. (Doc. 7). Suffice to say, that Plaintiff claims that he transferred from USP-

3

Allenwood, and placed in the SMU program at USP-Lewisburg due to his filing of grievances regarding the conditions of the SHU and challenging the BOP's policy that required an inmate to be housed in the SHU for 12 months. (Doc. 14, pp. 3-4). In particular, Plaintiff claims that on May 10, 2005, he was placed in the SHU at USP-Allenwood for a misconduct charge for a unspecified prohibited act. Plaintiff was sanctioned to 30 days in the SHU by the DHO as a result. While serving his SHU sanction time, Plaintiff claims that he sought to file an Administrative grievance challenging the conditions of the SHU, and the BOP's policy requiring an inmate to be housed in the SHU for 12 months. Plaintiff alleges that SIS staff member Defendant Lt. Mconnell said, with respect to his grievance, "If you file any grievance, you will sit in (SHU) for one year and be transfer (sic)." (*Id.*, p. 4, ¶ 7.). Plaintiff alleges that three (3) months later, *i.e.* September 28, 2005, he was transferred to USP-Lewisburg and confined in its SHU. Plaintiff alleges that while in USP-Lewisburg's SHU, he attempted to file a grievance and an unknown staff member threatened him by stating that "If you file any grievance you will be placed in our Special Management Unit (SMU)." (*Id.*, ¶ 9.). Plaintiff then avers that after he made numerous requests regarding the reason for his transfer to the SMU, his Unit Manager Adams told him that then USP-Allenwood Warden Williamson, along with then USP-Lewisburg Warden Smith, wanted him in the SMU. (*Id.*, ¶ 11.). Plaintiff alleges that on January 12, 2006, an unknown female SIS officer informed him that he was being placed in the SMU "for pursuing Administrative remedies, and his race (Native American), and the (BOP) Regional Director Dodrill for Northeast Region, and Warden Troy Williamson are involved in a (sic) ungodly campaign against Native American for their past and present prison disruptive occurrences, in which was unknowing to Plaintiff." (*Id.*, ¶ 12.).

Plaintiff then avers that on March 23, 2006, Defendant Williamson, now the Warden at USP-Lewisburg, responded to his Administrative remedy and stated "'it has been predetermined by regional Director Dodrill and SIA T. Matthews that Plaintiff was the leader of the Native American Gang at USP-Allenwood facility' and your appeal is denied." (*Id*., ¶ 13.). Plaintiff avers that he subsequently filed another grievance in which he claimed that he was being targeted and discriminated against based on his nationality, his native spiritual belief, and that he was being subjected to retaliation for exercising his appeal right. (*Id*., ¶ 14.). Plaintiff then claims that he made several inquires regarding the status of his BOP administrative remedy process, but that he was informed by prison staff and Warden Williamson that there was no record of his filing any Administrative remedies. (*Id*., ¶ 15.). Finally, Plaintiff avers that on April 1, 2006, he tried to file another Administrative remedy, claiming that he was targeted as a leader of the Native Gang due to his practicing his spiritual religion, and that he was being retaliated against for exercising his right to file BOP grievances. (*Id*., p. 6, ¶ 16.). Plaintiff alleges that to date, Warden Williamson and other supervisory staff members continued to claim that there are no records of any of Plaintiff's grievances. (*Id*., ¶ 17.).

Plaintiff states that he is challenging Defendants' race classification and his alleged gang leadership, and he claims that he is being retaliated against for filing grievances. (Doc. 14, p. 11). With respect to the John Doe Defendants 1 to 98, Plaintiff does not allege any personal involvement of them concerning his retaliation claim necessary to name these unidentified BOP officials as Defendants. With respect to two John Doe Defendants, in his Affidavit attached to his original Complaint, Plaintiff again states that after his transfer to USP-Lewisburg, on December 8, 2005,

when he asked for BOP Administrative remedy form BP-8, he was threatened by an unknown prison staff that he was going to be placed in the SMU if he filed his grievance. (Doc. 14, p. 4, ¶ 9.). Plaintiff also again states that on January 12, 2006, an unknown female SIS officer told him that he was being placed in the SMU due to his pursuit of Administrative remedies, and due to his Native American race. (*Id.*, ¶ 12., p. 5). Plaintiff does not sufficiently allege the personal involvement of Defendants Lappin, Dodrill, Williamson, Mathews and John Doe Defendants 1 to 98 in the claimed retaliatory transfer to the SMU due to his race and filing grievances.

Plaintiff does not request any relief in his amended pleading. (*Id.*, p. 12).

Plaintiff states that he "has attempted" to exhaust his administrative remedies regarding his present claims against the BOP and Defendants. (*Id.*, p. 2, ¶ II.).[4]

As mentioned, Plaintiff's Fifth Amendment due process claim of SMU confinement has been dismissed, and he was permitted leave to amend his pleading regarding his First Amendment retaliation claim. (Doc. 13).

---

[4] As we previously noted, it is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Id.* at 230. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

### III. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

### IV. *Bivens*.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West*

*v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

**V. Discussion.**

*1. BOP is not a person under Bivens*

As his first Defendant in his Amended Complaint, Plaintiff names the BOP.[5] However, the BOP is not a proper party Defendant in a *Bivens* action. *See Burnside v. Warnick*, 2005 WL 3071690, * 3 (M.D. Pa.); *Umezurike v. BOP*, 2005 WL 2100700, * 2 (M.D. Pa.).

*2. No Personal Involvement of John Doe Defendants 1 to 98*

As discussed above, there is no personal involvement alleged with respect to 98 of the John Doe Defendants 1 to 100. Plaintiff alleges only two (2) unknown staff members at USP-Lewisburg told him that if he filed any grievance he would be placed in the SMU, and that since he filed an Administrative remedy he was being placed in the SMU. (Doc. 14, pp. 4-5). Plaintiff does not state that the John Doe Defendants had anything to with the decision to allegedly transfer him to the SMU program due to his race and filing of grievances other than to inform him of the consequence for filing a grievance.

Plaintiff has now had more than ample time to find the names of his John Doe Defendants since he initially filed this case on February 14, 2006, *i.e.* over four (4) months. Since Plaintiff has been given one opportunity to amend his Complaint, and he has still failed to identify the John Doe Defendants, we do not find that he should be given another chance to amend his pleading with respect to the identity of the two John Doe Defendants.

---

[5]The BOP is named as a Defendant in Plaintiff's caption, but not in his "Parties" section of his Amended Complaint. Doc. 14, pp. 1 & 7.

Morever, as we stated in our prior Report and Recommendation, there is no procedure for pursuing civil rights actions against John Doe Defendants. The Court does not have the ability to direct service on the John Doe Defendants due to Plaintiff's failure to identify them, and this warrants dismissal of the claims against the unnamed Defendants. *See Vollmer v. Bowles*, 1997 WL 102476 at * 2 (N.D. Tex 1997); *Siguradson v. DelGuercio*, 241 F. 2d 480, 482 (9th Cir. 1956) (claims against John Doe Defendants dismissed as frivolous because federal rules make no provision for joining fictitious Defendants in an action under a federal statute).[6] Therefore, we shall recommend that John Doe Defendants 1 to 100 be dismissed.[7]

*3. Supervisory Defendants Lappin, Dodrill, Williamson and Mathews*

Plaintiff names Defendant Lappin, BOP Director, since he has "paramount power and authority over the overall operations of prisoners housing, transfer, discipline" ... . (Doc. 14, p. 7, ¶ 21.). The personal involvement of this Defendant with respect to Plaintiff's retaliatory transfer claim is completely lacking, and this Defendant cannot be held liable based on *respondeat superior,* as he is attempting to do.

---

[6] Further, since the Plaintiff was given an opportunity to identify the John Doe Defendants in his amended pleading and failed to do so, he should not *sua sponte* be given leave to amend his pleading a second time in this case. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"). *See Fauver v. Shane*, 213 F. 3d 113, 116-17 (3d Cir. 2000).

[7] If the Plaintiff is able to identify any of the John Doe Defendants during discovery and to state the personal involvement of the Defendants in his placement in the SMU program and in his alleged retaliatory transfer, he may request leave to again amend his pleading. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given").

9

As stated, Plaintiff alleges that he was told that Defendant Williamson wanted him in the SMU program. Plaintiff also alleges that Defendant Williamson responded to his Administrative Remedy by stating that it was predetermined by BOP Regional Director Dodrill and Defendant SIA Matthews that he was the leader of the Native American Gang at his former prison, USP-Allenwood, and then denied Plaintiff's appeal. (*Id.*, p. 5, ¶ 13.). Plaintiff claims that Defendant Williamson further informed him that there was no record of any of Plaintiff's Administrative remedies. (*Id.*, pp. 5-6). Also as stated, Plaintiff claims that the supervisory Defendants were "involved in a (sic) ungodly campaign against Native Americans for their past and present prison disruptive occurrences." (*Id.*, p. 5, ¶ 12.).

We do not find that the responses to Plaintiff's Administrative remedies with respect to his challenge to his placement into the SMU program are sufficient personal involvement by the supervisory Defendants. *See Burnside, supra.* We also find that Plaintiff's detailed allegations do not suffice to name the BOP Director (Lappin) and the Northeast Regional Director (Dodrill) as Defendants in this action. *Respondeat superior* is not an acceptable basis to hold a BOP official as a Defendant in a *Bivens* action, as mentioned above.

Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. *See Rode,* 845 F.2d at 1208.

A Defendant prison official cannot be held liable for the actions of others since the doctrine of *respondeat superior* is not an acceptable basis for civil rights liability. *See Durmer v. O'Carroll*, 991 F. 2d 64, 69 (3d Cir. 1993). Liability may only be based upon Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 547 F. 2d 1077 (3d Cir. 1976).

We find that the four supervisory Defendants, Lappin, Dodrill, Williamson and Mathews, should be dismissed since their personal involvement in the alleged retaliatory transfer of Plaintiff to the SMU program due to his grievances and his race is lacking.

As discussed, Plaintiff alleges that Defendant Williamson allowed the application of an illegal prison policy that caused him to be placed him in the SMU program on January 20, 2006, presumably to the present. Plaintiff also states that he was transferred to the SMU based on retaliation premised on his race and the grievances he filed. However, Defendant Williamson's personal involvement based on his responses to Plaintiff's Administrative remedies is not sufficient with respect to the alleged retaliatory transfer by Plaintiff.

Plaintiff also states that Defendant Williamson informed him that there was no record of any Administrative remedies appeals filed by Plaintiff. (Doc. 14, p. 5). As we previously stated, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional

right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.

Plaintiff has not stated a First Amendment retaliation claim against Defendants Williamson, Lappin, Dodrill, and Mathews. In *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), the Court stated that "a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials." To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). We find that this nexus does not exist with respect to the four supervisory Defendants. Plaintiff does not allege that our Defendants retaliated against him due to his race and his grievances by placing him into the SMU program. Plaintiff's claims amount to a dispute with the decisions of the BOP supervisory Defendants that he

was the leader of a Native American Gang and the findings that he was involved in prison disruptive occurrences. As the Third Circuit recently stated in *Smith v. Dept. of General Services of PA*, C.A. No. 05-3405, (3d Cir. June 7, 2006), slip op. p. 8, "a claim of First Amendment retaliation requires personal involvement in the alleged retaliatory conduct so that there is a causal connection." (Citations omitted) (Non-Precedential).

Moreover, as previously discussed, Plaintiff has not alleged that he had a "protected liberty interest" that was infringed by the actions of the supervisory Defendants "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[T]he baseline for determining what is 'atypical and significant'--the 'ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his conviction in accordance with due process of law." *Griffin v. Vaughan*, 112 F.3d 703, 706 (3d Cir. 1997) *quoting Sandin*, 515 U.S. at 486.

Plaintiff avers that the BOP officials found that he was the leader of a Native American Gang and determined that he should be placed in the SMU program. Plaintiff's claims against the supervisory Defendants relate to their decision to place him in the SMU program. We do not find that this decision implicates a liberty interest.

In *Griffin*, the Court found that confinement of a prisoner in restrictive housing for fifteen (15) months did not implicate a constitutionally protected liberty interest. Based on *Sandin* and *Griffin*, the Plaintiff's Complaint as against the BOP supervisory Defendants fails to state a claim, since his

3 ½ month (as of March 9, 2006) placement in the SMU program does not give rise to a protected liberty interest. Further, no liberty interest is implicated by the Plaintiff because he had no right to a particular prison classification, *i.e.* general population classification. It is well-settled that an inmate has no recognizable constitutional right to a particular custody status. *See Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997); *Vega, supra*.

Moreover, as the District Court has already found (Doc. 13, p. 5), based on this Court's decisions in *Francis v. Dodrill,* 2005 WL 2216582 (M.D. Pa.), and *Stotts v. Dodrill*, Civ. No. 04-0043, M.D. Pa., Plaintiff's placement in the SMU does not implicate his due process rights.

Further, no conspiracy is properly alleged in this case. As stated, Plaintiff claims in a conclusory fashion that the supervisory Defendants were involved in an "ungodly campaign against Native Americans." (Doc. 14, p. 5, ¶ 12.). As the Court stated in *Pardue v. Gray*, C.A. No. 04-2784 (3d Cir. 6-2-05), slip op. p. 8 (non-precedential):

> [t]o establish the existence of a conspiracy under § 1983
> a plaintiff must show that two or more conspirators reached an
> agreement to deprive her of a constitutional right under color
> of state law . . .

(citations omitted).

Since we find Plaintiff's allegation insufficient to claim that any of the four supervisory Defendants violated any of Plaintiff's constitutional rights, his conspiracy claim against them cannot be sustained. *See Pardue v. Gray*, *supra,* p. 8.

Moreover, we find that Plaintiff's bare conclusory allegations of conspiracy against the stated Defendants are inadequate to allege a conspiracy claim. *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993). "The

Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives. Bare conclusory allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Id*. at 928.  The Plaintiff does not specify any role or agreement of the stated Defendants in the alleged campaign against Native Americans.

Based on the foregoing, we find that Plaintiff has failed to allege any personal involvement of Defendants Lappin, Dodrill, Williamson and Mathews in his retaliatory transfer to the SMU program claim. Thus, we shall recommend that this case be dismissed as against these four supervisory Defendants.

*4. Defendant Lt. Mconnell*

As stated, Plaintiff claims that Defendant Lt. Mconnell, SIS staff member, threatened him by stating that if he filed any grievance, he will sit in the SHU for one year and then be transferred. (Doc. 14, p. 4, ¶ 7.). This is the only Defendant against whom we find Plaintiff has stated a First Amendment retaliation claim. Thus, we shall recommend that this case proceed as to Defendant Mconnell.

**VI. Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's *Bivens* action be dismissed as to Defendant BOP, and as to the four supervisory Defendants, Lappin, Dodrill, Williamson and Mathews, for failure to allege their personal involvement in his claims, and for failure to state a claim against them. It is recommended that John Doe Defendants 1 to 100 be dismissed.

It is also recommended that Plaintiff be allowed to proceed on his Amended Complaint only with respect to his First Amendment retaliation claim against Defendant Mconnell.  Finally, it is recommended that this case be remanded to the undersigned for further proceedings.


                                  **s/ Thomas M. Blewitt**
                                  **THOMAS M. BLEWITT**
                                  **United States Magistrate Judge**

**Dated: June 22, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH RAYMOND McKETTRICK | : | CIVIL ACTION NO. **4:CV-06-0329** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| TROY WILLIAMSON, et al., | : | |
| | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 22, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                             **s/ Thomas M. Blewitt**
                                                             **THOMAS M. BLEWITT**
                                                             **United States Magistrate Judge**

**Dated: June 22, 2006**